STATE of Texas

v.

Stacie Michelle KERWICK, Appellee.

No. PD–1837–11.

Court of Criminal Appeals of Texas.

Feb. 27, 2013.

Tanya S. Dohoney, Asst. Dist. Atty., for the State.

Danny D. Burns, Ft. Worth, for appellee.

## *OPINION*

KEASLER, J., delivered the opinion of the Court, in which KELLER, P.J., PRICE, WOMACK, and HERVEY, JJ., joined.

In a motion to suppress evidence, Stacie Kerwick asserted that the officer who detained her lacked reasonable suspicion to conduct the investigatory detention which led to her arrest for driving while intoxicated. The trial judge granted Kerwick's motion and the court of appeals affirmed the ruling. We hold that Kerwick's detention was supported by reasonable suspicion and reverse the court of appeals's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

At the brief pre-trial suppression hearing, Fort Worth Police Officer Bradford, testified to the circumstances surrounding his investigative detention of Kerwick. The trial judge's findings of fact and conclusions of law contained nearly all of Offi-

cer Bradford's testimony and stated the following:

1. At approximately 12:19 a.m. on the morning of August 14, 2009, Officer Bradford was dispatched to 2411 North Main (PR's Bar) in response to a fight.

2. According to the dispatch, several people were fighting in front of the bar.

3. Upon arrival, Officer Bradford observed several people standing outside the bar.

4. Officer Bradford made contact with an unidentified person who Officer Bradford believed was the individual who called the police.

5. Officer Bradford testified as having the name of the unidentified person written down, however, it was never offered as testimony.

6. The unidentified person that Officer Bradford spoke to was the owner of a damaged vehicle.

7. Officer Bradford's testimony did not reveal the cause of the damage to the vehicle nor where the damaged vehicle was located.

8. The unidentified person pointed at a vehicle that was parked across the street and said "there they are right there. There they are, there they are."

9. According to Officer Bradford, the vehicle that the unidentified person pointed to was parked across the street from the bar.

10. Officer Bradford then proceeded on foot across the street toward the vehicle.

11. The vehicle began to move, and Officer Bradford ordered the driver to stop the vehicle because he believed the occupants of the vehicle were involved in either an assault, criminal mischief, or both.

12. Prior to making the stop Officer Bradford did not know how many people there might be in the vehicle nor how many people in the vehicle might have been involved in an assault or criminal mischief.

13. Officer Bradford made contact with the driver, Ms. Kerwick.

14. Officer Bradford smelled a strong odor of alcohol coming from inside the car.

15. Officer Bradford observed the driver's bloodshot and watery eyes.

16. Officer Bradford has been employed by the Forth Worth Police Department since 2000.[1]

The trial judge concluded that Officer Bradford improperly stopped Kerwick's vehicle because the only information Officer Bradford possessed was the information from dispatch that several people were fighting and the "there they are" statement, which was vague and made by an unidentified person. In the trial judge's opinion, Officer Bradford did not possess specific, articulable facts establishing reasonable suspicion that some activity out of the ordinary was occurring or had occurred, and that Kerwick had a connection with criminal activity. The State's appeal followed.

The court of appeals affirmed the trial judge's ruling.[2] The court found that the State had not satisfied its burden to establish reasonable suspicion because it failed

1. Findings of Fact and Conclusions of Law at 1–2, No. 1169199 (County Criminal Court No. 10, Tarrant County, Tex. Nov. 29, 2010) (citations omitted).

2. *State v. Kerwick*, 353 S.W.3d 911, 913 (Tex. App.-Fort Worth 2011).

to adduce enough information from Officer Bradford on the record relative to the detention, and this prohibited the court from objectively determining whether reasonable suspicion existed to conduct the stop.[3] Specifically, the court held that "the record before us simply contains no facts to enable either the trial court or this court to objectively evaluate either Officer Bradford's *belief* that the person who said, "There they are right there. There they are, there they are," was the person who called the police or his *belief* that [Kerwick] was 'involved in an offense....' "[4] We granted the State's petition for discretionary review to determine whether the court of appeals properly applied the standard of review applicable to a motion-to-suppress ruling and correctly held that Officer Bradford lacked reasonable suspicion.

## STANDARD OF REVIEW

■■■ We review a motion to suppress evidence under a bifurcated standard.[5] The trial judge's determinations of historical facts and mixed questions of law and fact that rely on credibility are granted almost total deference when supported by the record.[6] But when mixed questions of law and fact do not depend on the evaluation of credibility and demeanor, we review the trial judge's ruling *de novo*.[7] Whether the facts known to the officer at the time of the detention amount to reasonable suspicion is a mixed question of law that is reviewed *de novo* on appeal.[8]

## REASONABLE SUSPICION

■■■ The Fourth Amendment to the United States Constitution permits a warrantless detention of a person, short of a full-blown custodial arrest, if the detention is justified by reasonable suspicion.[9] "[A] law enforcement officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate further."[10] Reasonable suspicion to detain a person exists if an officer has specific, articulable facts that, combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity.[11] These facts must show unusual activity, some evidence that connects the detainee to the unusual activity, and some indication that the unusual activity is related to crime.[12] "Although an officer's reliance on a mere 'hunch' is insufficient to justify an investigatory stop, ... the likelihood of criminal activity need not rise to the level required for probable

3. *Id.* at 917.

4. *Id.* (emphasis in original and alterations omitted).

5. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim.App.1997).

6. *Id.*

7. *Id.*

8. *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (holding that determination of reasonable suspicion should be reviewed *de novo* on appeal, with deference to judges' findings of historical

facts); *State v. Mendoza*, 365 S.W.3d 666, 670 (Tex.Crim.App.2012).

9. *Terry v. Ohio*, 392 U.S. 1, 28, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex.Crim.App.2011).

10. *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 185, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004).

11. *York v. State*, 342 S.W.3d 528, 536 (Tex. Crim.App.2011).

12. *Martinez v. State*, 348 S.W.3d 919, 923 (Tex.Crim.App.2011).

cause."[13] The test for reasonable suspicion is an objective one that focuses solely on whether an objective basis exists for the detention and disregards the officer's subjective intent.[14] A reasonable-suspicion determination requires looking at the totality of the circumstances and reasonable suspicion may exist even if those circumstances standing alone may be just as consistent with innocent activity as with criminal activity.[15]

### ANALYSIS

 We first address the court of appeals's evaluation of the record and the trial judge's findings of fact and conclusions of law. When a trial judge rules on a motion to suppress and makes explicit factual findings, an appellate court must determine whether the findings are supported by the record.[16] At the outset, we note that the court of appeals properly disregarded portions of the trial judge's findings of fact number four and eleven which respectively found that Officer Bradford "believed" that the person with whom he spoke was the one who called the police and that the occupants of the vehicle were involved in either an assault, criminal mischief, or both. Officer Bradford's subjective beliefs are not relevant to the determination of reasonable suspicion. However, in reviewing the record, the court highlighted what it perceived to be the record's deficiencies and the questions the record and the trial judge's findings of fact

left unanswered: (1) what was said between Officer Bradford and the unidentified person; (2) why Officer Bradford believed the individual was the person who made the initial phone call to the police; (3) how much time elapsed between Officer Bradford's arrival at the scene and the call to dispatch; and (4) how the vehicle was damaged or why Officer Bradford believed the damaged vehicle belonged to the individual.[17] By focusing on what the record and the findings did not contain, the court ventured beyond its role in ensuring that the trial judge's findings were supported by the record. Instead, the court's review of the record, as well as its ultimate conclusion concerning its adequacy, centered on what it believed the record and the trial judge's findings should have contained. Based on our review of the record, we hold that the findings of fact that the trial judge entered are supported by the record. Indeed, the findings of fact essentially mirror Officer Bradford's suppression-hearing testimony in its entirety, indicating that the trial judge found Officer Bradford credible.[18] The court of appeals failed to grant the trial judge's factual findings almost total deference and review *de novo* the trial judge's legal conclusion that Officer Bradford lacked reasonable suspicion based on those factual findings.[19]

Relying on our opinion in *Ford v. State*[20] for support, the court of appeals held that "[n]o facts exist in the record to enable the

---

**13.** *United States v. Arvizu,* 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).

**14.** *Terry,* 392 U.S. at 21–22, 88 S.Ct. 1868; *York,* 342 S.W.3d at 536.

**15.** *York,* 342 S.W.3d at 536.

**16.** *State v. Kelly,* 204 S.W.3d 808, 818 (Tex. Crim.App.2006); *see State v. Castleberry,* 332 S.W.3d 460, 465 (Tex.Crim.App.2011) ("When the trial judge makes explicit findings of fact, we afford those findings almost total defer-

ence as long as the record supports them, regardless of whether the motion to suppress was granted or denied.").

**17.** *Kerwick,* 353 S.W.3d at 916–17.

**18.** *See State v. Sheppard,* 271 S.W.3d 281, 288 (Tex.Crim.App.2008).

**19.** *Id.* at 286–87.

**20.** 158 S.W.3d 488 (Tex.Crim.App.2005).

trial court or this court to assess whether either of [the] beliefs by Officer Bradford [that the person he spoke to was the caller and that Kerwick was involved in an offense] were objectively reasonable."[21] We disagree. While the specific, articulable facts introduced through Officer Bradford's testimony were neither ideally inclusive nor entirely descriptive, the facts found by the trial judge were sufficient to evaluate the reasonableness of Kerwick's detention. The court of appeals's reliance on our opinion in *Ford* is misplaced because the record in *Ford* is clearly distinguishable from the one presented here. In *Ford*, the record from a motion-to-suppress hearing contained only the detaining officer's conclusory statement concerning the purported reason for the stop—that Ford was following another vehicle too closely in violation of the Transportation Code.[22] Without more than a conclusory opinion, we held that the record failed to provide specific, articulable facts that would enable us to assess the reasonableness of the officer's opinion that Ford was committing an offense.[23] Far from a single conclusory statement, the trial judge's findings of fact listing specific, articulable facts known to Officer Bradford at the time he detained Kerwick—which the court of appeals incorporated in its opinion—demonstrate how dissimilar the *Ford* opinion is to the record before us and how its holding is inapplicable to the case at hand.

We begin our *de novo* review by identifying the relevant historical facts the trial judge found Officer Bradford knew at the time he initiated the investigative detention: (1) shortly after midnight, someone called the police to report several people fighting in front of PR's Bar; (2) upon arrival at PR's Bar, Officer Bradford saw several people standing outside; (3) Officer Bradford spoke to someone who was the owner of a damaged vehicle which was at the location; (4) this person, who identified him or herself to Officer Bradford, pointed at a vehicle parked on the roadway directly across the street from the bar and stated, "There they are right there. There they are, there they are;" and (5) as Officer Bradford approached Kerwick's vehicle, it began to move and he ordered Kerwick to stop.

While each fact in isolation may be insufficient to establish reasonable suspicion, based on the totality of the circumstances, we find that Kerwick's detention was supported by reasonable suspicion. The damage to the vehicle observed by Officer Bradford and the report of several people fighting is indicative that unusual activity occurred and that this unusual activity was some indication that a crime may have occurred.[24] The evidence further supports a reasonable basis to believe that either Kerwick or the car's other occupants may have been connected to this unusual activity. In addition to discounting the other facts known to Officer Bradford, the court of appeals specifically addressed the "there they are" statement and held that it "does not indicate any unusual activity, does not connect [Kerwick] to any usual activity, and does not indicate that any unusual activity is related to crime."[25] However, it did so by evaluating the statement apart from the context and the circumstances under which it was made. A piecemeal or divide-and-conquer approach deprives the

21. *Kerwick*, 353 S.W.3d at 917.

22. *Ford*, 158 S.W.3d at 493.

23. *Id.*

24. *See generally* TEX. PENAL CODE §§ 22.01 (Assault), 28.03 (Criminal Mischief) (West 2008).

25. *Kerwick*, 353 S.W.3d at 917.

statement of additional content gleaned from context and disregards an officer's ability to make rational inferences from the statement and other known facts.[26] In light of the damaged vehicle and the presence of several people outside of the bar after a report of several people fighting, and the clear identification of Kerwick's vehicle, the statement provided a rational basis for Officer Bradford to infer that the person whose vehicle was damaged was a potential crime victim and was identifying the person or persons responsible for the damage. As the court of appeals seems to suggest, it is conceivable that this person who identified the occupants in Kerwick's car could have been pointing them out to Officer Bradford for a reason wholly distinct from any involvement in an assault or criminal mischief, or that the vehicle was actually damaged in an unrelated incident. But Officer Bradford was entitled to interpret these facts with common sense and infer that criminal activity may have recently occurred.[27]

▆▆▆▆ Officer Bradford's belief that Kerwick or a passenger in her car was involved in criminal activity and that he needed to investigate was further supported by Kerwick's attempt to drive away as he approached. It was reasonable for Officer Bradford to infer that Kerwick was evading Officer Bradford either because Kerwick did not want to speak to him or because Kerwick and her passengers had been identified by a witness or potential crime victim at the scene. "[Flight] is not necessarily indicative of wrongdoing, but it is certainly suggestive of such"[28] and may be considered among the totality of the circumstances in a reasonable-suspicion analysis.[29] The Fourth Amendment does not require an officer "to simply shrug his shoulders and allow ... a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response."[30] Officer Bradford's investigatory stop was reasonable in order to determine Kerwick's and her passenger's identities and "maintain the status quo momentarily to obtain more information" concerning the possible criminal activity.[31] When police receive a call about an offense and, on arrival at the scene, someone shouts "There they are," it would be unreasonable for an officer not to investigate further. Amounting to more than a mere hunch, the specific, articulable facts, and the rational inferences flowing from those facts, warranted Officer Bradford's investigative detention of Kerwick.

**26.** *See Arvizu*, 534 U.S. at 273–74, 122 S.Ct. 744.

**27.** *See Illinois v. Wardlow*, 528 U.S. 119, 125, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) ("Thus, the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior."); *Sokolow*, 490 U.S. at 8, 109 S.Ct. 1581 ("The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as fact-finders are permitted to do the same—and so are law enforcement officers.").

**28.** *Wardlow*, 528 U.S. at 125, 120 S.Ct. 673.

**29.** *Id.* at 125–26, 120 S.Ct. 673 (further stating that, "Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning."); *Martinez v. State*, 72 S.W.3d 76, 83 (Tex.App.-Amarillo 2002, no pet.); 40 GEORGE E. DIX & JOHN M. SCHMOLESKY, CRIMINAL PRACTICE AND PROCEDURE § 13:64 (3d ed.2011).

**30.** *Adams v. Williams*, 407 U.S. 143, 145, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

**31.** *See id.* at 146, 92 S.Ct. 1921.

CONCLUSION

Based on the totality of the circumstances, we conclude Officer Bradford was justified in suspecting that Kerwick was involved in criminal activity and detaining Kerwick to investigate further. We reverse the court of appeals's judgment and remand the case to the trial court for further proceedings consistent with this opinion.

JOHNSON, J., filed an dissenting opinion, in which COCHRAN, and ALCALA, JJ., joined.

MEYERS, J., dissented.

JOHNSON, J., filed a dissenting opinion, in which COCHRAN and ALCALÁ, JJ., joined.

The entire record of testimony in this suppression hearing covers less than 5 pages—113 lines—including identification of the single witness, objections, and rulings from the court. Even if one believes, as the trial court did and as I do, that Officer Bradford testified truthfully, the record simply does not contain enough information to establish reasonable suspicion. The court was the finder of fact and, it seems to me, every bit of the testimony depended on the credibility and demeanor of the single witness, Officer Bradford. We are thus required to give almost total deference to the trial judge's determinations of historical facts and mixed questions of law and fact that rely on credibility and demeanor when supported by the record. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997).

Below, I set out the sixteen findings of fact, the record testimony in regard to that finding, and my comments about what the testimony contributes toward establishing probable cause.

Finding of Fact (FF) # 16

16. Officer Bradford has been employed by the Fort Worth Police Department since 2000. (R.R. at 5, 6)

Q How long have you been with the police department?

A Since 2000.

FF # 1

1. At approximately 12:19 a.m. on the morning of August 14, 2009, Officer Bradford was dispatched to 2411 North Main (PR's Bar) in response to a fight. (R.R. at 6)

Q Were you working on August 14th, 2009?

A I was.

. . .

Q Around 12:19—I'm talking about 12:19 a.m., were you dispatched anywhere?

A I was.

Q And where to?

A To 2411 North Main, PR's.

Q And why were you dispatched there?

A In reference to a fight.

Officer Bradford was dispatched at 12:19 a.m., but we do not know when the call was received or when Officer Bradford arrived at the bar. Was it soon enough that most of the people present at the time of the call are still present at the scene?

FF # 2

2. According to the dispatch, several people were fighting in front of the bar. (R.R. at 7)

Q What did you know about that fight before you got to that location?

A The details stated several people fighting out front in front of the bar.

FF # 3

3. Upon arrival, Officer Bradford observed several people standing outside the bar. (R.R. at 7)

FF # 4

4. Officer Bradford made contact with an unidentified person who Officer Bradford believed was the individual who called the police. (R.R. at 7)

Q And did you make contact with anyone?

A Yes, the—I believe it was the person who called the police.

The person he spoke to is identified only by gender—"he." That person was at a bar after midnight, and we have essentially no information about him. No physical description was given. Why did Officer Bradford believe that this person was the one who called the police? Was he intoxicated or sober? Did he provide any verification of his identity, such as a driver's license or other state-issued identification so that we know that he did not use a false name? Did his body show any indication that he might have been involved in the fight?

FF # 6

6. The unidentified person that Officer Bradford spoke to was the owner of a damaged vehicle. (R.R. at 7)

FF # 7

7. Officer Bradford's testimony did not reveal the cause of the damage to the vehicle nor where the damaged vehicle was located. (R.R. at 7)

[A] ... There was a vehicle that was damaged there. He was the owner of the vehicle that was damaged.

Q Okay. And did you see the damaged vehicle there?

A I did.

Did Officer Bradford verify ownership? There is no description of the damaged car or the asserted damage. Did the damage appear recent or was it showing rust? If he was calling the police about car damage, why did he report a fight? A call reporting a fight is likely to attract a police presence more quickly than a report of damage to a car in a bar parking lot because fights sometimes turn into assaults or murders.

FF # 5

5. Officer Bradford testified as having the name of the unidentified person written down, however, it was never offered as testimony. (R.R. at 7)

Q And did you speak to that person?

A Yes.

Q And do you know who that person was?

A I have it written down here.

Q So that person was identified to you?

A Right.

But not identified to the trial court. He testified that he had the name of the person written down "here," yet we have no name in the record, no way to discover whether the person was a solid citizen or a convicted thief and liar. And we have no testimony from this person about the events at the bar before Officer Bradford arrived that could have provided facts that firmly support a finding of reasonable suspicion.

FF # 8

8. The unidentified person pointed at a vehicle that was parked across the street and said, "there they are right there. There they are, there they are." (R.R. at 7, 8)

Q And what did—what did that person say to you?

A He pointed at a vehicle, which was parked across the street and pointed at it and said, "There they are right there. There they are, there they are."

FF # 9

9. According to Officer Bradford, the vehicle that the unidentified person pointed to was parked across the street from the bar. (R.R. at 8)

Q When you say across the street, where was that vehicle parked?

A Directly across from the PR's bar on the east side of the roadway, facing northbound.

The car was parked across the street. How far away was "across the street"? What was the lighting like? Were the faces of the people in the car visible and identifiable? What did the person believe that "they" had done? How did he know that "they" were the right "they"? Did he know appellee? If so, did he have any reason to falsely accuse?

FF # 10

10. Officer Bradford then proceeded on foot across the street toward the vehicle. (R.R. at 8, 9)

FF # 11

11. The vehicle began to move, and Officer Bradford ordered the driver to stop the vehicle because he believed the occupants of the vehicle were involved in either an assault, criminal mischief, or both. (R.R. at 8, 9)

Q (BY [prosecutor]) Okay. So the witness said, "There they are," and what did you do?

A I—I was on foot at this point. I walked over to the vehicle as it started moving northbound. At that point I stopped it.

Q How did you stop it?

A Ordered the driver to stop the vehicle. I yelled at her.

Q Why did you do that?

A Because I believed that they—at that point they were involved in an offense.

Q And which offense do you believe they were involved in?

A An assault, criminal mischief, or both.

According to the testimony in the record, at the time Officer Bradford stopped appellee's car, no one at the scene had alleged that "they" had any involvement in the reported, but unverified, fight or in causing damage to a car. In the record, there is not even verification that there had, in fact, been a fight—no injuries were shown to Officer Bradford—and no other witnesses, such as bouncers, were identified or questioned. A bare statement that "there they are" does not allege wrongdoing of any kind.

FF # 12

12. Prior to making the stop Officer Bradford did not know how many people there might be in the vehicle nor how many people in the vehicle might have been involved in an assault or criminal mischief. (R.R. at 9)

Q Were there passengers in that car, too?

A There was. There was one.

Q Before you made the stop did you know how many passengers there might be?

A No.

Q Did you know how many people in that car might have been involved in the assault—

A No, I didn't.

Q —or the criminal mischief?

There was no evidence in the record that there had actually been an assault or a criminal mischief, only hearsay statements from an unidentified person who the officer believed, but apparently did not know, had made the call to police about a fight and who had apparently alleged recent damage to a car.

FF # 13

13. Officer Bradford made contact with the driver, Ms. Kerwick. (R.R. at 9)

[Q] What did you do after you stopped and made contact with the Defendant?

A I spoke with the driver.

Q And what did you notice, anything about the driver?

FF # 14

14. Officer Bradford smelled a strong odor of alcohol coming from inside the car. (R.R. at 10)

FF # 15

15. Officer Bradford observed the driver's bloodshot and watery eyes. (R.R. at 10)

A Well, I could smell a very strong odor of alcohol coming from inside the car. As far as the driver goes, bloodshot, watery eyes and just the odor of alcohol was pretty strong.

The officer's observations gave him probable cause as to driving while intoxicated, but the issue here is not probable cause as to driving while intoxicated, but reasonable suspicion to stop appellee as she began to leave the bar area. Based on the record, we cannot even deduce that she had been in the bar, only that she was in the area.

Immediately after the response noted in FF # 15, the hearing concluded.

MR. LUSTER: Pass the witness.

MR. SHAW: No questions.

MR. LUSTER: State rests.

MR. SHAW: We rest.

As the majority notes, whether the facts known to the officer at the time of detention amount to reasonable suspicion is a mixed question of law and fact and, if the mixed question does not depend on an evaluation of credibility, it is viewed *de novo* by an appellate court. Clearly, the trial court's findings of fact are supported by the record. Equally clearly, the trial court credited Officer Bradford's testimony. Both the trial court and the court of appeals ruled that the testimony presented to the trial court at the suppression hearing did not provide sufficient evidence to support a finding of reasonable suspicion.

As the trial court set out in its conclusions of law,

> To justify an investigative detention, the officer must have specific articulable facts, which, premised upon his experience and personal knowledge, when coupled with the logical inferences from those facts would warrant the intrusion on the detainee. These facts must amount to more than a mere hunch or suspicion. The articulable facts used by the officer must create some reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detainee with the unusual activity, and some indication the unusual activity is related to crime.

The only information that Officer Bradford had to rely upon before making the stop was the dispatch, which stated that there was a fight among several people outside the bar and the vague statement "there they are" made by an unidentified person outside the bar. The vague statement "there they are" made by an unidentified person did not provide Officer Bradford with any specific articulable facts to form reasonable suspicion that some activity out of the ordinary was occurring, or had occurred, or that the detainee had a connection with the unusual activity. "There they are" does not identify who "they" are, nor what crime, if any, "they" had committed.

Prior to making the stop, Officer Bradford did not know what offense had been committed, nor did Officer Bradford know who, if any, among the vehicle occupants were involved in an offense.

Based on the evidence and the credibility of the witness, the court finds that Officer Bradford improperly stopped the vehicle because he lacked sufficient articulable facts to justify reasonable suspicion. (Citations omitted.)

The court of appeals agreed. After raising many of the questions I have raised, the court of appeals wrote,

In short, the record before us simply contains no facts to enable either the trial court or this court to objectively evaluate either Officer Bradford's *belief* that the person who said, "There they are right there. There they are, there they are," was the person who had called the police or his *belief* that Appellee was "involved in an offense ... [—a]n assault, criminal mischief, or both." No facts exist in the record to enable the trial court or this court to assess whether either of these beliefs by Officer Bradford were objectively reasonable. Without specific, articulable facts, a court has no means of assessing whether an officer's opinion is objectively reasonable. Without specific, articulable facts, a detention cannot be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular seizure in light of the particular circumstances. And when such a stop is not based on objective criteria, the risk of arbitrary and abusive police practices exceeds tolerable limits. Allowing a police officer's opinion to suffice in specific facts' stead eviscerates *Terry's* reasonable suspicion protection.

. . .

Deferring as we must to the historical facts found by the trial court and mixed questions of law and fact that rely upon the credibility of Officer Bradford, and applying a de novo standard of review to the pure questions of law presented and to the mixed questions not depending on Officer Bradford's credibility, we cannot hold that the trial court acted outside the zone of reasonable disagreement in granting Appellee's motion to suppress. The State failed to meet its burden at the suppression hearing to adduce facts proving under an objective standard, disregarding any subjective intent of Officer Bradford, that Officer Bradford's suspicion or belief that Appellee was violating the law was reasonable. Consequently, the trial court's suppression ruling comports with the requisites of *Terry v. Ohio,* the Fourth Amendment, and article I, section 9 of the Texas constitution.

*State v. Kerwick,* 353 S.W.3d 911, 917, 918 (Tex.App.-Fort Worth 2011). (Emphasis in original, citations omitted.)

Both the trial court and the appellate court applied the correct standards of review and proper analysis, and based on the skimpy record that was before them and is now before us, correctly determined that the record is unable to support a finding of reasonable suspicion. Even if one believes, as the trial court did and as I do, that Officer Bradford testified truthfully, the state did not carry its burden of justifying a detention and warrantless arrest. Because it did not, I would affirm the suppression ruling of the trial court and the judgment of the court of appeals.

I respectfully dissent.